The next case on the record this morning is Edwin Kuykendall v. David Schneidewind Did I miss something? No. Mr. Schneidewind? Yes. Are you standing for a reason? No, I was waiting for you to sit down. Okay, I was just wondering. I didn't think you were going first. Okay, is it Ms. Ryan? Yes. Okay, whenever you're ready, please present. May I please support the counsel? My name is Janet Yocum Ryan and I represent Edward Kuykendall, the plaintiff in this case. Kuykendall. Kuykendall. Okay, thank you. This appeal arises out of a dismissal under section 2619 and it involves a sale of property at 401 South Broadway here in Montgomery. The plaintiff is a resident of California and the broker involved in the transaction and sale of the property was located in Georgia and all of the defendants reside in Illinois. The property is a commercial property and The Dollar General, we know. The Dollar General. We've read the briefs. Are you sure? And the claim is for $8,973 that the plaintiff alleges is the responsibility of the seller under the terms of the lease. And the court and the defendant concentrated on the as-is provision of the purchase and sale agreement which was appended to the second amendment complaint. And the defendant misconstrued the cause of action alleged by the plaintiff to be that the seller had a duty to disclose known defects which under the terms of the contract, there were promises that the seller would disclose known defects. But the cause of action was for a breach of contract and common law fraud and statutory fraud based on the terms of the contract which required the warranty that the lease would not be breached. Now let me ask a question here because I think we're going to at least run into some concerns. There's a motion that was taken with this case to add a page that contained paragraph 22. Right? With me? Correct. And is it? I'm sorry, there's a train running. And were you in the courtroom when I explained that Justice Moore was not going to be here, by the way? Yes. Okay. Mr. Schneider? Okay, thank you. Is it your contention that we should include now the page number that contained paragraph 22 in order to reach the result that you want us to reach? No. Okay. The pages were not numbered in the contract. That's one of the reasons why I missed the missing page when I was reading the contract. But the court can reach the conclusion that the plaintiff is arguing without the missing page and the plaintiff's appellant referenced the missing page only as a footnote in the appellant brief. So are you withdrawing this motion now? No. The defendant fully briefed the issue that was raised in a footnote. I brought it to the court's attention, hey, there's this missing page and there's a paragraph that applies. But I was just bringing it to the court's attention, oh, this happened. It wasn't before the trial. And then the defendant... Then whose attention did you bring it to? This court's attention in my footnote. Oh, okay, in the motion. In the appellant brief. Okay, but now you found the motion to supplement the record. After the defendant fully briefed the issue and suggested that the plaintiff should have filed a motion to supplement the record, and it appeared that, well, maybe he's stipulating. So I filed a motion to supplement the record after, prior to the filing of my reply brief and his response to my... So you don't know whether Mr. Schneiderwin objects to the motion? Oh, I'm sure he objects.  That's what I saw. Yes. So, okay. Right. But none of that is really... Let's go on then. That's just an aside to the actual appeal. Okay. I raised it in a footnote in my... But you're pursuing that motion before us because of the footnote in the briefing that went on as to this issue. It's not essential to the determination of my appeal, but it is an issue that I have raised. Okay. Thank you. For the purposes, apart from the footnote in my appellate brief, the portions of the contract that apply to my cause of action alleged in my complaint are paragraph 10 of the purchase and sale agreement, in which the seller warrants that the seller is not in breach of the lease with regard to property meaning, and paragraph 18, in which the seller warrants the accuracy of the estoppel certificate. Also, in paragraph 19A, the seller promised a copy of the lease and any notices of breach of lease, and in paragraph 19H, the seller promised photographs of the building and the property. And they were not delivered timely before the closing? That's not in the record. This was a very early motion to dismiss, but the contention on appeal is that the trial court adopted a legal theory that was contrary to the allegations of the complaint and construed the as-is clause as determinative of the motion to dismiss without considering the contract as a whole. Because if the legal theory was whether the seller failed to disclose non-defects, that was defendant's legal theory. The legal theory alleged in the contract was that the seller failed to comply with the terms of the lease and uphold his responsibilities at the lease, which survived closing. And that was fully set forth in the purchase and sale agreement that was appended to the contract. And so, as a matter of law, the as-is clause in isolation cannot support the dismissal of the case under section 2619. And more importantly, from just the standpoint of what would have been required to an attorney responding to these motions, the affidavits attached to the motions to dismiss simply sought to attack the factual sufficiency of the plaintiff's claims. And those are summarized in a chart that's provided in an appellant's brief. And because of that, there was no duty on the part of the plaintiff to provide a counteraffidavit, because that does not arise to the level of affirmative matter. And there's one affidavit that the Court paid particular attention to, which was the affidavit of Mr. Fitzgerald, who was the Georgia realtor involved in the sale of the property. And he had provided this affidavit in support of a motion to dismiss the first amendment complaint when he was a party. And there are reasons to object to the affidavit that were not before the Court. But before the Court, he attested that he was the quote-unquote sole listing broker and that he exclusively represented the trust with regard to the sale of this particular property to this particular plaintiff. He did not attest that he had an exclusive listing of the property. And there is no affidavit testimony that denies that any of the defendants was marketing the property. There's no affidavit testimony that denies notice of any property defects. There's no affidavit testimony that denies that there was a breach of the lease. There was no affidavit testimony... Why would that be necessary? Why are all these affidavits necessary in your mind? Well, the only affidavits they supplied were denying, like, very limited... Like, for instance, they denied that they were... Some of the defendants denied that they were legal owners of the property, which doesn't answer the question whether they were beneficial owners of the property. And nobody denied that they had notice, but yet they talked about, at length, the nature of the property damage and whether they received notice of the defects using matter that was attached to the plaintiff's complaint. But even then, it didn't deny that they knew of the property defects or that they had notice of the property defects. They just said that they did not receive the letter until the day after the closing. Which letter? There was a maintenance letter that was attached. A lot of the evidence in this case is attached to the plaintiff's complaint. Right. And so, on the day prior to closing, the seller, the tenant of the property, sent a letter to Mrs. Schneiderlin and the Schneiderlin Revocable Trust stating that the landlord was in breach of the lease based on disrepair of the property. According to the missing page, that notice was deemed to have been received on the day of closing. But evidence provided by Mr. Schneiderlin in this 2619 motion, he provided a document that said that she didn't actually receive it until the day after closing. But that's one of the reasons for the motion to supplement the record. But all of that information does not amount to affirmative matter because it seeks to attack the factual sufficiency of the complaint. Well, in 2619, the legal sufficiency of the complaint is deemed admitted, isn't it? Well, according to, I'm talking about the factual sufficiency of the complaint. Me too. Right. He's seeking to attack, he's seeking to deny facts alleged in the complaint. And the way that it's just that that particular, I'm using those words out of this court's description in Barbara Coleman, which I think sets forth a very clear explanation of all the different kinds of pre-trial motions. And so the way it was described in that case was that it's not affirmative matter if it seeks to attack the factual sufficiency of the plaintiff's claim. And all of this discussion that was raised in these motions to dismiss sought to attack the factual sufficiency of the plaintiff's claim. The other cases that I quoted in my briefing described it in other ways. But if it sought to negate a factual allegation of the complaint or simply provided evidence that would be used to refute the factual allegations of the complaint, different ways to state the same thing. But I just thought that it's clearly stated. So if you look at the chart that's provided in the appellant brief that's in color, it's got a blue top. What page? Oh, goodness, I didn't. It's early in the brief. It's in, like, page 4 or 5 of the brief. And it takes up a whole page. Page 13? Yes. Thank you. And all of the affidavit testimony is set forth by defendant, and then the complaint allegation that it negates is provided on the left in the left column. And so that just illustrates that the affidavit testimony seeks to negate an allegation of the complaint. And so it doesn't rise to the level of affirmative matter. How many exhibits were there to your complaint? Oh, we attached the purchase and sale agreement, the default letters that were sent to Ms. Schneiderlin that were then forwarded to Mr. Pagendahl, and then the letters that were sent to Mr. Pagendahl. The tenant's stop-loss certificate was attached, the receipt for the payment of the property damage, photographs of the damage prior to Mr. Pagendahl endeavoring to make the repairs, and the demand letter that he sent to Mr. Schneiderlin and the insurance agency, and then the response sent from Mr. Schneiderlin and the insurance agency. But with regard to the ‑‑ so none of the information provided by the defendants in support of their motion to dismiss arose to the level of affirmative matter, except arguably the as-is provision, and that is not sufficient to allow a dismissal of the case as a matter of law in light of the entire contract that requires that the seller not be in default of the lease, that the seller make sure that the tenant is not in default of the lease, and that the seller warrants the accuracy of the stop-loss certificate, which was inaccurate because the tenant said that there was no default of the lease. And the reason that there is an allegation of fraud is because Mr. Pagendahl relied on these promises in signing the as-is provision, and that's evidenced in the margins of the contract. He crossed out certain portions of the contract, in particular in paragraph 19, where ‑‑ That's right. That is what made me curious because I saw that your client was making changes and then the very next page is the one that was missing, so I thought you might catch that. But that is ‑‑ Well, the one that's missing doesn't have anything that would have been a detriment to him. The one that's missing promises that the seller will abide by the lease. And he had ‑‑ his realtor had a copy of the entire contract and gave me the missing page. So I assumed that Mr. Pagendahl read the entire contract when he agreed to it, but I guess that could be an issue at trial if the defendant wants to raise it, but I don't know why he would. But in paragraph 19A, it didn't occur to me that ‑‑ I don't think that there's an allegation that the page was missing at the time that he signed it. But anyway, in paragraph 19A, promises copy of the lease and any notices regarding the breach of the lease, and then he crossed out B and C, and then F and G, and then left in the promise to provide photographs of the building and the property. But so all of that should have been considered by the trial court in considering the contract, and it makes it so that the court's reliance on the as‑is provision and without regard to those other provisions was error. And also the court's deference to the defendant's legal theory that was contrary to the allegations of the complaint and the disregarded plaintiff's legal theory was error. The court made a finding that there was no fraud, no misrepresentation, but there is no support for that finding. The defendant did not make any ‑‑ provide any affidavit testimony that denied misrepresentation, and there's nothing in the documents or on the face of the complaint to support that finding. And then the court made a finding that there was no fraud, a conclusion of law that there was no fraud, and he based that conclusion on two cases. One case involving residential plaintiffs, and the issue was the seller's failure to disclose known defects. Well, that's not the issue alleged in this complaint, and this is commercial property. And then the other case was a federal case in which the court said, well, you've got a breach of contract action here, but that's not sufficient to allege a violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act. And in this case, the allegations of fraud are sufficiently alleged in, and the court actually made it denied the 2615 motion, and that's not appealed. So that case doesn't really support a determination of a dismissal of the fraud allegations. Did you file counteraffidavits? No. I just want to make sure I didn't miss anything. Did not file counteraffidavits because I didn't think there was a duty to file counteraffidavits in light of that he was simply attacking the factual allegations of plaintiff's claim. The affirmation involving his allegations of lack of notice, he says the default letter was received after the closing, but the warranty survived closing, so as a matter of law, that's an issue. But nevertheless, that issue seeks to negate allegations of the complaint. Specifically, in Paragraph 20, the complaint states that the seller was notified prior to the closing date of the breach of the lease. And in Paragraph 24, it states that the seller had actual constructive knowledge of the defects because they were open and obvious. Well, under the defendant's legal theory, open and obvious is an important issue, and it's part one, an allegation of the complaint. And the photographs back that up that the court took special notice of that allegation of the complaint and the photographs that were intended to support the maintenance letters to show that the property was in disrepair and breach of lease. And they should have been construed in the light of what's favorable to the complainant. And these issues are relevant to defendant's legal theory, but not necessarily to plaintiff's complaint. And also, there are factual allegations in plaintiff's complaint that do not rise to the level of affirmative matter. And so, for those reasons, and also with regard to the missing page, without the missing page, the dismissal should be reversed. Okay. That even with the missing page substantially are claims. Okay. Thank you very much for your comments. Next, you'll have an opportunity to rebut Mr. Schneiderwind. Are you the Schneiderwind that gave an affidavit? No. Oh, I see a different man in the picture. That's why I was wondering. That is my father. Okay. Mr. Schneiderwind, I don't want to start off by cutting you short, but I do want to ask a question. This case was dismissed under 2-619, which even in your brief, you admit that under that rule, the court must accept the allegations of the complaint as true. And so, I'm wondering how you get a 2-619 when there's so many paragraphs of the lease that are in dispute as a matter of law. So maybe you can help me with that. Well, I think, Your Honor, the Barbara Coleman case provides, even though we admit some of the allegations are true, the Barbara Coleman case, as a defendant, does not admit the truth of the allegations of the complaint as true. That may touch on the affirmative matters that they raise. Here we have a complaint. So you're saying that the Barbara Coleman case, if I go read that, is going to tell me that under 2-619, the legal facts set forth in the complaint need not be all taken as true. Correct, Your Honor. Okay. Thank you. I think in this court, Justice Chaffetz... That it touches on... Yeah, on the affirmative matters, which I raised. Numerous affirmative matters. As the court indicated, there was numerous exhibits attached to the complaint. And those exhibits actually contradict a lot of the allegations in the complaint. But the affirmative matter, as Justice Chapman indicated, has to touch on the allegations in the complaint. And, as you say in your complaint, that the affirmative matter must be apparent on the face of the complaint. Yes, Your Honor. Otherwise, the motion must be supported by affidavits or other certain evidence. Which I did, Your Honor, with affidavits. Along with the... and even using plain exhibits, because they contradict the exact allegations in our complaint. So, for example, how do you get around the as-is clause versus Paragraph 10, Paragraph 16, and Paragraph 18? Well, I think even the as-is clause, it is as-is. I mean, the property is there. But then you go further in Paragraph 16, which indicates that the plaintiff has to come and inspect the property. The plaintiff is... acknowledges the property is not new. And then, I believe, on Paragraph 16E... I'll get it for you, Your Honor. I'm sorry, 16B. Provided that the buyer understands and agrees that the seller will not be responsible for the repair, replacement of any deficiencies in the structures, improvements, or land. And that this provision supersedes all other provisions in the purchase agreement regarding the condition of the property. But then we have the very close timing of this estoppel letter. Yes, Your Honor. Did that arrive the day of closing? What? There's no dispute? It's not in dispute as far as I know, Your Honor. It is postmarked July 15, 2014. Sent from Dollar General's headquarters in Glensville, Tennessee to a Marissa, Illinois address, which is in southern St. Clair County. It did not arrive the next day as provided in the U.S. Postal Service Certified Mail Tracking Report. It arrived the day after the sale, closing, and transfer of the property. But there is a contention of some prior notice, correct? That is the plaintiff's contention. Again, it's open and obvious. Again, the plaintiff had to come down and inspect the property. Now, what is the contention that you understand of prior notice? As far as receiving the letter, I guess I don't understand, Your Honor, what the letter stated. As far as the seller goes. I don't understand what the prior notice, other than they're just saying it was open and obvious conditions. That I guess we live at this commercial piece of property. Well, I mean, you can tell from the parking lot, for example. Pretty cracked. Yeah. But if there is no notice from the tenant, provided that there is an issue with the parking lot, there's no letter generated. And here the letter was generated on July 14th, or unfortunate, that the letter was generated on July 15th by the tenant and sent to us. It seems odd to me that just out of the clear blue, a tenant would generate this letter. Certainly it had to have been asked for as part of the lease and the sale. No. Was not? No, Your Honor. They generate these things all the time. No, but what I'm saying is somebody had to notify the Dollar General, for example, that ownership was being changed and perhaps request a letter. Yes, they received a request for the estoppel letter from the plaintiff. Right. And what I'm saying is they receive a request. You have no control over when it's actually written, right? Correct. So here it comes. And what are we saying? It comes a day too late? So a day late is a day short? Yes, Your Honor. It is, unfortunately. But she's attached three other letters. They have July 17th for damages, obviously clearly written after the date of the closing. And she's even attached one July 31st. Any duty doesn't continue in perpetuity because we own this property and the defendants own this property. Defendant trusts on this property and they go on forever. But I guess I would like to first address the motion to supplement the record on appeal. Yes, do that. That's a good point. Defendant didn't fully brief the issue, as my briefs indicate, regarding page 22. I did not address the merits of page 22 at all. Did you discuss it? As I recall, I thought I did. I did not discuss the page or the paragraph that Plaintiff was referring to in the missing page. I do address the footnote that she erased, the argument in her footnote that, you know, there's a missing page. Well, she could have supplemented the record or asked for it to be supplemented. In fact, she did ask this Court to supplement the record, which was granted on March 22nd, 2016. But there was no mention of this material missing page when she asked to supplement the record at that point in time. Do you have an objection to us entering an order supplementing the record now? Yes, I do, Your Honor. And why? Because I don't know how you can. The record was never before the trial court. There's nothing the circuit clerk asked to even give this Court. Okay, so what you're saying is there was no argument before the trial court about paragraph 22. Yes, it wasn't. And why should this Court issue sanctions against? I was asked, she asked, I guess sanctions were requested of me regarding this complaint here under the defendant. It's not plaintiff's, or it's not defendant's breach of contract action. It's plaintiff's breach of contract action. Plaintiff has the duty to attach a true and accurate copy of the complaint, not defendant. And moreover, regarding that, that aspect, it's plaintiff's burden to the appellate, as the appellant here, to provide this Court with a record sufficiently complete to permit review of the air complaint. And any doubts arising from that record are to be construed against the appellant. Now, the second district in Coleman v. Windy City Balloon found that when portions of the record are lacking, as the plaintiff claims here, it is presumed that the trial court acted properly in the entry of a challenged order and that the order is supported by the part of the record not before the reviewing court. That is, in the absence of the proper record, it is presumed that sufficient evidence was presented to support the trial court's judgment and thus require affirmance of the judgment. That's the second district's hold. And the first district also indicated that affirmance is dictated when crucial facts are admitted to the record. Again, it wasn't defendant's duty to provide this record. It weren't the appellant. It was plaintiff's duty. And it was plaintiff's duty to come back when the breach of contract action was filed. So the record's not going to show that attached to the complaint, even the original complaint, that this page exists in the record? No, Your Honor, because in the original complaint, she never attached the contract. Contract. The contract was not attached to the second amendment complaint after defendant supplied it to her. Again, her primary cause of action in this case is a breach of contract. Did the defendant give her the entire contract? Your Honor, I quote what I had attached to my list. Did the defendant give her the entire contract, including paragraph 22? If I didn't, if you're talking me as a plaintiff. I'm talking about the people you represent. Did the plaintiff actually receive the entire contract when it was transmitted by your side? Obviously they did, Your Honor. Okay, that's all I'm asking. Obviously you did? Yeah, because as she said before this court, that she received it from her client and her client's commercial, or I guess real estate broker. It was her client's real estate broker that grabbed this contract. I thought she said she got it from you all. I attached it. She might have gotten it from me, but then she confirmed, I thought she said it, and I'm not one to put words in her mouth, but she got it from her client and also H&L commercial real estate. But you're confirmed before this court that you do use due diligence to give her every page, including this page with paragraph 22. I gave her what I had, Your Honor. I filed what I had. So you can't say you gave her page 22? No, I did give her page 22. I don't have paragraph 22. You can't say you gave her that page. No, I can't say that, because I filed what I had, Your Honor. I did not give it to her. But as far as my defendants giving me when this transaction occurred, yeah, I'm sure they did, Your Honor. It was part of the contract. It was a closing. Okay, that's fair. I appreciate your comment. Now, here the trial court did not err in dismissing the matter, correct, with prejudice as to all three defendants under 619. The purpose of 2619 is to afford the means of obtaining at the outset of the case a summary disposition of the issues of law, easily proved and easily proved issues of fact. The plaintiff has admitted his pleadings on the primary basis of the release of his breach of contract. The contract, as she says, is a commercial building agreement. Now, the court can look in this. The contract clearly identifies the parties that issued it, the buyer, the type of buyers, the buyer's agent, H&L, Morrisville Real Estate, the seller, the trust, and the seller's agent, Triad Consulting Group. However, the plaintiff filed suit against four other individuals that are in the parties to this case, David G. Schneiderman, Schneiderman Insurance Agency, Advantage Realty, and Evelyn J. Schneiderman individually. The plaintiff claims alleged counts one fraud and counts three ill-consumed fraud against all these defendants, with count three breach of contract being alleged only against the defendant trust. But the court dismissed some of these non-related parties. Yes. And you argue that? Yes, the court dismissed all the parties, Your Honor. Well, I understand. But the actual entity that owned this ground was the trust. Yes. Okay. Now, as those defendants that had no party in the contract, those were, again, David G. Schneiderman, Schneiderman Insurance, Advantage Realty, and Evelyn J. Schneiderman individually, all filed uncontroverted affidavits in this matter to establish that they were not parties to the real estate transaction, none of them were the owner or the seller, and none of them were the real estate agent or broker involved. All these facts are corroborated by the real estate agreement, the publicly reported document, the affidavit of Gregory Fitzgerald, who was the trial, who was the actual realtor involved in the matter, and who was the sole listing broker and agent for the property. Well, if we stick those folks aside. Okay. You know, just put them off to the side, if you will. All right. And just talk about the owner.  The trust. The trust. All right. That is fine, Your Honor. Again, there's a link. The main cause of action against the trust is the breach of contract action. Now, as plan stated, this arises out of the estoppel certificate and the maintenance items the tenant requested be repaired after the sale or closing. These maintenance items, plans to miss, were open and obvious and existed prior to the sale. However, the estoppel out here was authored by the tenant, not the landlord. On June 27, 2014, it indicated the landlord was not in the fault under the lease. It indicated the landlord was not in the fault under the lease, Your Honor. You're speaking quickly. 12 years. I'm sorry. I'll slow down. The closing on this property occurred on July 16, 2014, as indicated by the records before the trial court and as admitted by Planner's Counsel. The inspection? No, the closing. The closing. The closing occurred on July 16, 2014. I didn't see any indication that there was an inspection. Is there something missing or was there? I don't know the plan. It was his duty to inspect. I don't know if he came from California to inspect or not. You don't know about his insurance agent? I'm sorry. The buyer's agent. I do not know about the buyer's agent. Okay, thank you. A section of the real estate agreement, 18 of the real estate agreement, provides for the estoppel certificate. Nowhere in Section 18 does it provide that the estoppel certificate is to claim maintenance issue items. Now, regarding, again, the letter that the plan claims to have damaged, the July 15, 2014 letter, thanks to items that were outside the building, again, open and obvious. Open for inspection by the plaintiff or his agent. The plaintiff made this letter and then consented to a second amendment complaint, and the letter was sent on July 15, again, and received on July 17, as evidenced by the U.S. certified mail receipt that was attached to the defendant's motion to dismiss. At that time, the property had already been transferred from the defendant trust to the plaintiff, and the defendant, at that time, had no notice at the time of the closing of the sale of these conditions. The defendant had no notice? No. Well, the defendant had, if in fact this was open and obvious, and it's the defendant's property, it should have been open and obvious to the defendant as well as the plaintiff? We had no notice. They had no notice from the tenant, Your Honor, that there was any condition wrong. And the plaintiff erroneously compounded the damages by attaching three additional letters, one from July 17 and July 31, which I've already addressed, obviously coming after the date and sale of the property. Now, Section 16, as you referred to, is the agreement that the Plaintiff's Counsel referred to. The property was sold as is. It was the plaintiff's sole responsibility to investigate the property. The property was not new, and the seller didn't want any addition to the property. And, again, Section 16B provided a paragraph that they will not be responsible for any repair or replacement of any deficiency of structure. This provision superseded the rest of the contract provisions. Superseded? Why? That's what the language of the contract stated, Your Honor. Which paragraph is that? That is 16B. 16B. Thank you. Basically, Plaintiff is asking this Court to undo the agreement that was agreed upon by him and rewrite it to his benefit. Because, again, they bought it as is, knowing the condition of the property. So you see no conflict in terms between 16, I'm sorry, between 10 and 18, compared to the as is? No, especially not 18 with the estoppel certificate, Your Honor. And then once the paragraph 16B comes into play and supersedes, and then in conjunction with that paragraph 16E of the agreement, the plaintiff found the property acceptable. He agreed to take it in its present as is condition. But if he found it unacceptable, he had the option of terminating the agreement. The plaintiff did not do that. He proceeded to close on the property and take the property, knowing he was taking it as is. Therefore, not only did the terms of the agreement that Plaintiff had actually incorporated into the Second Amendment complaint affirmably negate his cause of action, but Plaintiff's admission that the alleged defects, again, were open and obvious, along with the letters being the date and when they were received, negate count two. There was no breach of agreement. Let me ask you about 17B, if I could. All right. It's on page A032 in the appellant's brief. It says no there. Do you see that? I don't have that in front of me, Your Honor. I guess it was crossed out and not agreed upon by the appellant. Whose initials are those? If I may, Your Honor. Yes, you may. And I'm going to ask you about the same with regard to the next paragraph. Actually, you may use that. I do not know whose initials are, Your Honor. Do you know if it's the seller or the buyer? Because if it says no, what does that mean? Does it mean that if it's the buyer, he didn't agree to that? Your Honor, I don't know whose initials are. Because that clearly says that there's supposed to be something that reports on the condition of the property. That's talking about toxicity. I understand. It's not an issue here. But there was to be a report. Again, I don't know whose initials are. I don't think this has any bearing. The claim is made by Plans Council in the appeal, and I think it's irrelevant. But, again, as far as the initials, I do not know who those are. I'm familiar with my parents, and they do not look like that. Okay. How about 17C? You don't know either? And, again, for the record, it's on page A032. It does look like an S, by the way, to me. But I don't know. It looks like an H and K, an H and L. I thought you might know. Seller's agent, that's H and L. I don't know. Because when I go to page A033, and I'm looking now at paragraph 19, we've got the same kind of thing going on. It looks like the same initials. And as to photographs, it says, photographs of building and property broker is getting. And I'm assuming, because I don't know, but I'm assuming that that language was in there at the time this was executed. The date of execution being June 9th, 2014. Is that right? The date of execution. June 9th, 2014. That's what the document says. Page A035? Yeah, that's June 9th, 2014. So at the time this contract was executed, it appears that the purchaser had not seen photographs of the property and that the broker was getting them. Now, who would that broker have been? Would that have been the agent of your client? I don't know, Your Honor. Was there a broker for the purchaser? Yes. Right. H and L. That's who broke the contract. The purchaser's broker. It's a standard contract. Yeah. I mean, that's who broke it. I mean, it's a lawyer didn't write it, but these standard contracts are approved by the general boards of real estate. I understand, Your Honor. Okay. I need to ask you this question. When do you believe that this contract went into effect? June 9th or June 12th? It's when the last party that signed it, I believe June 12th, when it went into effect, Your Honor. Okay. But, again, I don't know if that has any bearing on this appeal. Well, sometimes I ask irrelevant questions. You've asked that before. Don't let that bother you. Not at all. I'm sure when we were practicing, you thought that too. But, anyway. All right. Did you have something else you wanted to say before? Well, I didn't even get to my cross appeal, Your Honor. All right. I have been. Do you want to give him a couple minutes on that? If he'd like. I mean, there was a lot of inquiry. Right. I'll give you an extra three minutes. Just touch on your cross appeal for me. Because I did interrupt you. You can start now with it. All right, Your Honor. Thank you. The court erred when it denied the defendant's trust attorney's fees pursuant to the terms of the contract. Basically, this provision, section 31 of the agreement, which provides for attorney's fees in any action or proceeding involving a dispute between the buyer, the seller, or the broker. Here, the court has strictly enforced these provisions. And we'll look at the terms of these provisions. The provisions mean nothing more and nothing less than the letter of the text. The lawsuit here is clearly between the plaintiff and the buyer. The defendant and the defendant trusts the seller. The lawsuit clearly arises out of the execution of the agreement. The plaintiff further admits this in his reply brief, that the plaintiff's claims arose out of the execution of the agreement, page 23 of the brief. And it further states that, and that the subject of the plaintiff's action is that the seller did not perform the terms of the contract. There's no doubt here that the defendant trust was the prevailing party here. The pursuant to the terms of the agreement, the defendant trust shall be entitled to attorney's fees and costs under that provision. There's no ambiguity. As for the Rule 137 sanctions to the other defendants, again, the four other defendants, David G. Schneider, Schneider Insurance Agency, Vanity Realty, and Evelyn J. Schneider individually, had nothing to do with this transaction. So they were not parties. It's clear on the basis of the complaint that they weren't parties to this transaction or agreement. The purpose of Rule 137 is to prevent abuse of the judicial process by penalizing claimants who bring vexatious and harassing actions based upon unsupported allegations of fact or law. The case very similar to this is this case before this Fifth District in Hess v. Lloyd, which was decided... Was what? What? Was the name of the case? Hess v. Lloyd, decided by this Court in 2012. The Court found there that contradictions with claims complained in the exhibit attached to the complaint such that the plaintiff had no basis on which to proceed against defendants. Just like what we have here in this case, Your Honor, we've got four parties that were not parties to the transaction. Aren't of the agreement. Aren't part of the sale. Again, there was no evidentiary hearing held on this by the trial court. So thus, I believe, Your Honor, in these circumstances, this Court is in just as good a position as the trial court is to determine and weigh the evidence here on granting sanctions. It's really at the noble standard. Sanctions under Rule 137? Correct, Your Honor. Well, doesn't Rule 137 require that if you're going to ask for sanctions there's supposed to be a hearing in the same case? Yes, and I asked for sanctions before the Court. But you weren't granted a hearing. I wasn't granted a hearing, Your Honor. So how are we supposed to come up with a sanction, even if you're right? Because I believe this Court can take a de novo review of the record, Your Honor. The case law provides a de novo review when there's no evidentiary hearing. This Court sits in the same position as the trial court to weigh the evidence and credibility of that. So therefore, for those reasons, defense counsel, defendants would ask that the Court grant Rule 137 sanctions in this matter to be awarded. Thank you. You did it. And we'll, of course, afford you additional couple minutes as well. Ms. Ryan, would you clarify for me what you contend was their notice of the defects that should have been impaired under the lease? The breach of the lease? The allegation is they were in breach of the lease. It doesn't matter when they received the notice of the breach of the lease because the allegation of the complaint is they're responsible under the terms of the contract to be in compliance with the lease. And they're also warranted that the – and it says each lease or rental agreement is in full force in effect and it says that they are free from – I'm skipping a few terms that I don't think are relevant – free from default and no event has occurred which with notice, et cetera, would be – there are no claims credits. They're also in favor of penance. Don't they have to have notice of some type of that that would put them in breach or in default? If you read the contract as a whole, the warranties that the seller provides, including the stoppage certificate warranty, survive the date of closing. So – Refer to the paragraph because our judge is absent. Okay. The seller promises to disclose no defects in 16G, which is the as-is provision. Well, I was reading from the warranties, paragraph 10. Paragraph 10. That's what I was reading from. And I was reading particularly that it relates to leases. 10 and 18 both relate to warrant compliance with the lease, but in particular 10 warrants that the – let me check my notes. It warrants that the seller is not in default of the lease with regard to property maintenance. So that's my summary. To the best of seller's knowledge, no event has occurred which was notice. Well, that's with regard to city ordinances. Now, I have carefully read Section 10, and there are some provisions of Section 10 that require notice and some provisions of Section 10 that just require compliance with the lease. And under A, seller is a – it warrants ownership. It talks about, to the best of seller's knowledge, no toxic or hazardous substances. And that might explain why there was the waiver under 17 or whatever that the court noted the toxic substances because he took the seller's word for it that the seller didn't know of any toxic substances. But in E, it says each lease or rental agreement affecting the property is in full force in effect, and it doesn't say to the best of seller's knowledge. And why would it? The seller should warrant that it's in compliance with the lease. And also, in Section 22, which is the subject of the motion to supplement the record, the seller is warranting tenant's compliance with the lease. Let me ask you one quick question about that. Mr. Schneiderman indicated that 22 was never before the court. Do you agree with that? I agree with that. Now, Section – But in your prior argument, I thought you said – you wrote down that Section 16B required them to maintain the property in good condition, reasonable wear and tear accepted. Section 16B allows reasonable wear and tear, but if you look at Section 22 in conjunction with 16B, they list the same items. That's why Section 22 is important, and why, if that requires remand for the court to reconstruct – the trial court to reconstruct the contract, that's going to make a determination that the case has to be dismissed under 216. This is a 2619 motion. We're not – the plaintiff – the defendants are trying their case and asking the trial court and this court to weigh evidence. And, of course, construction of the contract is de novo, but in light of that, Section 22 lists the same items that are listed in the additives provision of 16B. If you look at the mechanical defects in the material workmanship and mechanical components of the structures, improvements, or land, including but not limited to heating, plumbing, electrical, or sewage disposal systems, well or water supply, and on and on and on. And that is also warranted in Section 22 that – Well, let's not talk about 22 right now because it wasn't before the trial court. Okay, but let's talk about it in terms of the additives provision. Well, let's not. Let's – let me ask you a question. Look at paragraph 17. This gives you a right to inspect, but it seems to be a right that exists after the sale of the property. Maybe I'm reading that wrong. Buyer shall have 15 days from acceptance to complete the investigation. Acceptance – was there a prior acceptance document or – this appeal? Okay, so there's still an issue as to this acceptance document. It's not relevant. You would have had ability to inspect and might have discovered this open and obvious – I mean, those are facts we don't have before us. Well, he didn't allege that in his motion, but the estoppel certificate, the seller agreed – the buyer agreed that the seller in paragraph 18 would provide estoppel certificates. And that is – and there was some confusion in the defendant's testimony with regard to the estoppel certificate. So that's Exhibit A to the complaint. It refers to what? The estoppel certificate? That is Exhibit A to the complaint. It was completed after the purchase and sale agreement was signed, and yet the tenant states that there is no default on the lease. Then – Was a complete copy of the lease or rental agreement attached to the certificate of estoppel? Not in our possession. I do not have a copy of – this is very early in this case, and there was no – there has not been discovery, and it is required that a lease be attached to the estoppel certificate. Go ahead. Also, the contract requires that any breaches in the lease be – and notices of breach be attached to the estoppel certificate and also a separate provision provided to the purchaser, and there has not been discovery. So there might have been notices that predated the July 15th notice that was sent to Mrs. Schneider and the trust that said, hey, there's a breach of the lease. There was a July 15th letter that was sent to her, and that should not be confused with the estoppel certificate. That's a letter that notified her that there was a breach of the lease, but there might have been other notices. I'm curious as to how that just occurred within a day of closing that July 15th letter about the maintenance issues. Well, the issue here today is whether my client can proceed with his lawsuit and make these allegations for reimbursement. I think you misunderstood her question. I think you misunderstood Justice Schneider. Yeah, I'm just wondering if the curiosity of the timing with respect to that, if there was any prior notice that you're aware of, and how it was that they just coincidentally happened to send a letter on the 15th. Maybe they wanted to get these issues taken care of before the ownership changed because the lease was in default. But there's no affidavit regarding that supplied by the defendant to answer the question. In other words, there's no affidavit from anybody that explains what Justice Chapman just asked. Exactly. And there's no discovery. And there's been no opportunity for discovery because he was rushing toward the 2619. And I shouldn't be required to do something procedurally that is not procedurally required. Okay. Let me answer just one question because you're really out of time, and that is, why did you include these other parties as named defendants? Initially I included the other parties as named defendants because they were the recipients of the demand letter, and so I assumed that the plaintiff was talking to them when he was discussing these things. And when I was researching the issues, I found an obituary for an Evelyn Schneiderlin, and I thought that was the person. I thought she had lied and the other parties were doing this. But Evelyn Schneiderlin signed the contract, so then I added her as a party. But I didn't want to let these parties out because this is a revocable trust. The property is owned by a revocable trust and under Eleanor's law, beneficiaries and trustees are liable for fraud and breach of contract. So until I know more about the – and also their affidavit testimony was denied legal ownership. It didn't deny beneficial ownership. So I'm not ready to dismiss them voluntarily, but certainly if it becomes apparent that they are not parties, I will dismiss them voluntarily. Okay, great. Thank you so much for your comments. This matter will be taken under advisement and a disposition will be issued in due course. Thank you both for your arguments. Thank you.